IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) |
| | ) Criminal Action No. 22-44 (MN) |
| ROBERT HIGGINS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION
Alexander Ibrahim, Bryan Williamson, Assistant United States Attorneys, UNITED STATES ATTORNEY'S OFFICE, Wilmington, DE – Attorneys for United States of America

Jeremy H. Gonzalez Ibrahim, LAW OFFICE OF JEREMY H. GONZALEZ IBRAHIM, Chadds Ford, PA – Attorney for Defendant

June 17, 2025
Wilmington, Delaware

**NOREIKA, U.S. DISTRICT JUDGE**

On February 15, 2024, the grand jury returned an indictment against Defendant Robert Higgins for seven counts of tax fraud, mail fraud, and wire fraud, in violation of 18 U.S.C. §§ 1341, 1343, and 7201.[1]  (D.I. 83).  The Government broadly alleged that Higgins operated a multi-year commodities scheme in which he "misappropriated and converted investor-supplied [precious] metals and funds for his own benefit," culminating in the loss of more than $50 million in gold, silver, and other assets across more than 1,000 victims.  (*Id.* at 7).  The Court held a jury trial from October 15 to 24, 2024.  (D.I. 146-51, 154, 155 ("Tr.")).  At the close of trial, the jury returned a guilty verdict on all seven counts.  (D.I. 129).

On April 10, 2025, Defendant moved for acquittal notwithstanding his conviction under Rule 29 of the Federal Rules of Criminal Procedure, arguing that the evidence the Government adduced at trial was legally insufficient to sustain his conviction.  (D.I. 138).  In the alternative, Defendant seeks a new trial pursuant to Rule 33 on the basis that the Court improperly admitted evidence seized from his home.  (*Id.*).  On May 1, 2025, the Government filed its opposition brief.[2]  (D.I. 139).  The Court will DENY the motion for the reasons that follow.

---

[1]  The February 15, 2024 indictment was the Third Superseding Indictment.  (D.I. 83).  The original indictment is dated May 12, 2022.  (D.I. 2).

[2]  In a passing footnote, the Government asserts that Defendant's Rule 29 and 33 motions are untimely but "[n]evetheless . . . responds on the merits."  (D.I. 139 at 2 n.1).  The Court will follow the Government's lead and focus on the merits of Defendant's arguments.  *See United States v. Yung*, No. 19-1640, 2022 WL 2112794, at *7 (3d Cir. June 13, 2022) (concluding that appellant "forfeited" argument when "he tuck[ed] it into a single footnote, without supporting authority or analysis"); *John Wyeth & Bro. Ltd. v. CIGNA Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997) ("[A]rguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.").

I.  **LEGAL STANDARD**

  A.  **Rule 29 Motion for Acquittal**

After a jury verdict, "[a] defendant may move for a judgment of acquittal" of any offense for which the evidence is insufficient to sustain a conviction. Fed. R. Crim. P. 29(c). "A defendant challenging the sufficiency of the evidence pursuant to Rule 29 bears a heavy burden." *United States v. John-Baptiste*, 747 F.3d 186, 201 (3d Cir. 2014) (internal quotation marks omitted). Acquittal "should be confined to cases where the prosecution's failure is clear." *United States v. Brodie*, 403 F.3d 123, 133 (3d Cir. 2005) (internal quotation marks omitted).

In analyzing a Rule 29 motion, "the court must view the evidence and the inferences logically deducible therefrom in the light most favorable to the government." *United States v. McNeill*, 887 F.2d 448, 450 (3d Cir. 1989). The jury's verdict may not be overturned unless "the record contains no evidence, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt." *Id*. (citation omitted). "In determining whether evidence is sufficient, [the Court] will not weigh evidence or determine the credibility of witnesses." *United States v. Casper*, 956 F.2d 416, 421 (3d Cir. 1992). Nor will the Court "substitute[e] its judgment for that of the jury." *Brodie*, 403 F.3d at 133.

  B.  **Rule 33 Motion For a New Trial**

Under Rule 33, "the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). "Such motions are not favored and should be granted sparingly and only in exceptional cases." *United States v. Silveus*, 542 F.3d 993, 1005 (3d Cir. 2008) (internal quotation marks omitted). "Unlike an insufficiency of the evidence claim, when a district court evaluates a Rule 33 motion it does not view the evidence favorably to the Government, but instead exercises its own judgment in assessing the Government's case." *United States v. Johnson*, 302 F.3d 139, 150 (3d Cir. 2002). The Court "can order a new trial only if it

believes that there is a serious danger that a miscarriage of justice has occurred – that is, that an innocent person has been convicted." *Silveus*, 542 F.3d at 1004-05.

## II.   DISCUSSION

### A.   Sufficiency of the Evidence (Rule 29)

Defendant's first ground for acquittal is that the Government failed to adduce evidence at trial upon which a jury could reasonably find that Defendant used wires or the mail in perpetrating his fraud. (D.I. 138 at 5-9).  The core of Defendant's argument is that "there was no nexus between the use of the wire/mail and the advancement, furtherance or carrying out of the alleged scheme." (*Id.* at 9).  Defendant also argues that the Government failed to prove venue in this District – that his conduct took place in Delaware. (*Id.*).  If Defendant is right, he entitled to acquittal as a matter of law as to Counts Six (Wire Fraud) and Seven (Mail Fraud).  Fed. R. Crim. P. 29.  The Court finds, however, that the Government presented sufficient evidence at trial to sustain Defendant's conviction.

#### 1.   **Wire Fraud**

"To prove wire fraud, the government [must] show (1) the defendant's knowing and willful participation in a scheme or artifice to defraud, (2) with the specific intent to defraud, and (3) the use of interstate wire communications in furtherance of the scheme."  *United States v. Scarfo*, 41 F.4th 136, 198 (3d Cir. 2022) (internal quotation marks omitted); 18 U.S.C. § 1343.  Use of the telephone, internet, text messages, email, or other similar means of communication qualifies as "interstate wire communications" under the statute. *See United States v. Andrews*, 681 F.3d 509, 528-29 (3d Cir. 2012).  As a result, the Government need only prove that Defendant knowingly used any of those instrumentalities in furthering his scheme. *Id*.

The Government carried its burden at trial.  It introduced copious evidence that Defendant, his agents, and his companies used wire communications to deceive his clients, including phone

4

call recordings, text messages, emails, and witness testimony. *Id*. ("[T]he [wire fraud] statute does not require that the defendant himself sent the communication or that he intended that interstate wire communications would be used. Rather, § 1343 requires that the defendant 'knowingly caused' the use of interstate wire communications.").

For example, Defendant sent emails inducing prospective customers to sign up for his fraudulent depository program at First State Depository ("FSD"). (*See, e.g.*, GX-33 (email to victim Michael Phillips containing "a copy of your First State Depository Commercial Custody Account Application" and subscription "Agreement"); GX-113 (email to victim George Gillespie advertising the "Maximus Silver [Lease] Program" as a follow up to "the agreement that was sent to you" and asking "how you would like to proceed")). Once a client enrolled, Defendant accepted funds by wire transfer to purportedly purchase metals on their behalf, and later misappropriated those same funds by wire. (*See, e.g.*, GX-2, 3, 4, 126; Tr. at 349:19-352:3, 393:3-403:8). Defendant then manufactured fake invoices and sent them by email to his victims in order to keep them believing that he still had possession of their precious metals or money. (*See, e.g.*, GX-26 ("Holdings Detail Report" sent to victim Luby Sidoff that misrepresented his holdings); GX-108 (same for victims James Watkins and Joseph Unger)).

And, when certain victims began to question Defendant and seek the return of their gold and silver, he used emails, phone calls, and text messages to throw them off track. (*See, e.g.*, GX-2 (email to victim William Koenig asserting that Defendant could not return Koenig's money on the basis that his "bank was closed"); GX-7 (email to Koenig denying that Defendant and his team "are being uncooperative" or "ignor[ing] you"); GX-43 (Defendant email to victim David Miceli providing excuses for why Defendant "will not be ready for [Miceli's] pre-arranged [gold] pickup on Monday," including a doctor's appointment, car accident, and employee departures)). To that

same end, the Government played recorded phone calls, introduced text messages, and elicited testimony from William Koenig, David Miceli, and Joseph Unger in which Defendant continued to obscure the truth about the status and location of their gold – i.e., that it was missing. (*See, e.g.*, GX-15-17, 47, 86, 88; Tr. at 269:25-270:18 (Koenig "discussed on the telephone" silver purchases with Defendant), 571:2-18 (Miceli describing Signal messages with Defendant), 1045:12-15 (Unger testifying to phone, text, and email communications with Defendant)).

Nonetheless, Defendant argues that "there was no nexus" between these communications and "the advancement, furtherance, or carrying out of the alleged scheme." (D.I. 138 at 9). But, as just explained, a reasonable jury could well conclude that Defendant used phone calls, text messages, and emails to persuade his victims to deposit their metals with FSD, mislead them to believe their gold and silver was safely held, and later obscure the theft once they became suspicious. This was more than enough evidence for a jury to find that Defendant knowingly used interstate wires to defraud his customers.

Finally, Defendant challenges the sufficiency of nine specific wire communications that were either alleged in the indictment or presented at trial. (*See* D.I. 138 at 6-9; GX-11, 34, 42, 111). The Court need not address each item individually, however, because even allowing, for the moment, that Defendant were correct, the Rule 29 test is not whether *all* of the trial evidence proved guilt beyond a reasonable doubt. *See Casper*, 956 F.2d at 421 ("The evidence need not be inconsistent with every conclusion save that of guilt."). Instead, "[o]nly when the record contains **no evidence**, regardless of how it is weighted, from which the jury could find guilt beyond a reasonable doubt, may [the] court overturn the verdict." *McNeill*, 887 F.2d at 450 (emphasis added, citation omitted). Thus, "[i]f *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, the conviction must be upheld."

*United States v. McGlory*, 968 F.2d 309, 322 (3d Cir. 1992) (internal quotation marks omitted). On the basis of the evidence detailed above, the jury could have done so here.

### 2. Mail Fraud

Defendant similarly challenges the sufficiency of the evidence for the jury's guilty verdict on the mail fraud count. "The elements of mail fraud under 18 U.S.C. § 1341 include: (1) a scheme to defraud; (2) use of the mails to further that scheme; and (3) fraudulent intent." *United States v. Jimenez*, 513 F.3d 62, 81 (3d Cir. 2008) (internal quotation marks omitted); 18 U.S.C. § 1341. As with wire fraud, Defendant contends that the Government failed to prove a nexus between the use of the mail and his fraudulent scheme to gain custody of his client's money and precious metals and use them for his own purposes. (D.I. 138 at 9).

Once again, evidence presented at trial supports the jury's verdict that Defendant defrauded his customers by mail as part of the overall scheme. Specifically, Defendant received payments through the mail, such as a check for storage fees of more than $171,000 from the New Direction Trust Company. (*See, e.g.*, Tr. at 482:6-12). Defendant kept those customer "storage fees" without in fact storing their metals – he misappropriated them instead. (*See, e.g.*, Tr. at 1144:19-1145:8; GX-131 at 1). And on at least one occasion, Defendant mailed a fabricated invoice to a client purporting to show purchases of more than $1 million in silver on the client's behalf. In fact, Defendant used the client's money for other, unlawful means, such as paying off Defendant's own personal debt to a third party. (*See, e.g.*, GX-3, 4, 126; Tr. at 274:4-7, 291:11-293:5, 302:17-24).

Defendant also "caused" some of his victims to use the mail in interacting with him. 18 U.S.C. § 1341. Koenig testified that he corresponded several times "by mail" with Defendant, including sending "certified mail" seeking return of his money and metals, which was "signed for" by Defendant or one of his agents. (*See* Tr. at 274:4-7, 291:11-293:5, 302:17-24). The Government entered those parcels into evidence for the jury's direct review. (*See, e.g.*, GX-3

(false "invoice" provided to Koenig); GX-8 (USPS letter from Koenig to Defendant demanding "I want my funds"); GX-309-11 (envelope containing letter sent by Koenig via USPS certified mail to Defendant asking him to "[p]lease respond to this letter")). And all of it was corroborated by FBI Special Agent Lindemann, who confirmed that he found and seized Koenig's "certified mail" addressed to the "attention [of] Robert Higgins" as part of the search of FSD. (*See* Tr. at 427:15-429:16, 446:2-447:11).

Accordingly, the Government adduced evidence sufficient for a reasonable jury to determine that Defendant used the mail as part of his scheme.

### 3. <u>Venue</u>

Defendant contends that the Government failed to prove that venue appropriately lies in Delaware. (D.I. 138 at 9). Unlike the substantive crimes of wire and mail fraud, the Government need only prove venue by a preponderance of the evidence. *United States v. Auernheimer*, 748 F.3d 525, 533 (3d Cir. 2014). Venue for wire fraud, a continuing offense, lies "in any district in which [the] offense was begun, continued, or completed." 18 U.S.C. § 3237(a); *United States v. Goldberg*, 830 F.2d 459, 465 (3d Cir. 1987). As for mail fraud, venue is proper anywhere the Defendant (1) placed a letter in the mail, (2) received a letter, or (3) knowingly caused a letter to be delivered to a specific address. 18 U.S.C. § 1341; *United States v. Turley*, 891 F.2d 57, 60 (3d Cir. 1989). The Government adduced evidence of each at trial.

First, for wire fraud, the Government established that FSD was located at 100 Todds Lane in Wilmington, Delaware. (*See, e.g.*, Tr. at 213:4-13, 330:15-20, 425:4-9). It also proved that numerous communications made in furtherance of Defendant's scheme were transmitted from that location, such as emails and phone calls. (*See, e.g.*, *id.* at 788:22-789:11 (FSD assistant Danielle Leins sent email to defraud Miceli from her computer at her desk in her office at FSD), 837:5-11 (FSD bookkeeper Stanley Caskey explaining that FSD's computer server was located in the

shipping room at 100 Todds Lane); GX-15-17 (phone calls from Koenig answered at FSD)). Thus, the evidence shows that Defendant's fraud "was begun, continued, or completed" in this District. 18 U.S.C. § 3237(a).

For mail fraud, as already discussed, the trial evidence showed that Defendant corresponded by USPS mail with Koenig. Those letters and packages were addressed to, received at, and sent from FSD's warehouse at 100 Todds Lane. (*See, e.g.*, GX-8 (letter from Koenig addressed to Defendant at "100 Todds Lane, Wilmington, DE 19802"); GX-309-11 (same for certified mail)). The Government's witnesses also spoke to the use of the mail in the scheme. (*See, e.g.*, Tr. at 291:11-293:5, 302:17-24, 446:2-447:11 (Agent Lindemann found Koenig mail addressed to Defendant during search of 100 Todds Lane)). Thus, the evidence at trial supported the jury's verdict as to venue by a preponderance.

Accordingly, Defendant's motion for acquittal is denied.

### B. Motion for a New Trial (Rule 33)

On September 29, 2022, in a related parallel civil action in this District, *CFTC v. First State Depository Co., LLC, at al.*, No. 22-1266 (RGA) (D. Del.) ("the Civil Case"), the court entered a statutory restraining order ("SRO") against Defendant and his companies and appointed a receiver ("the Receiver"). (Civil Case D.I. 12). As part of the SRO, the court froze and authorized the Receiver to take control of "all assets owned, controlled, managed, or held by Defendant[]," including "any real or personal property." (*Id.* ¶¶ 6-8, 14). On May 11, 2023, subject to an application by the Receiver, the court granted a search of Defendant's home, finding that "good cause exists for [the search] so that any precious metals that may be in [Defendant's] home may be discovered before they are dispersed or otherwise placed beyond the Receiver's reach." (Civil Case D.I. 116 at 1). During that search, the Receiver found gold coins hidden in the ceiling panel of a basement bathroom in Defendant's house. (GX-136, 137).

On September 18, 2024, in this case, Defendant submitted a pretrial motion to suppress that evidence. (D.I. 97). He argued that the search of his home and seizure of the gold coins violated his Fourth Amendment right because the Receiver is not a "law enforcement officer" under Rule 41 of the Federal Rules of Criminal Procedure and because the District Court lacked jurisdiction to authorize the search. (*Id.* at 2-3).

On October 8, 2024, the Court heard argument on Defendant's motion to suppress. (D.I. 112 at 59:5-60:16). The Court denied the motion from the bench and memorialized the ruling by order dated October 10, 2024. (*Id.*; D.I. 121 ¶ 4(c) & n.4). The Court reasoned that Defendant had no expectation of privacy and lacked standing, because Defendant's house was an asset under the "control" of the Receivership at the time of the search.[3] (D.I. 112 at 59:5-60:16). Even if Defendant did have a valid privacy interest, the Court ruled, the Receiver provided probable cause by submitting more than 70 pages of briefing, exhibits, and sworn declarations to the District Court in the Civil Case. (*Id.*; *see* Civil Case D.I. 114). Indeed, the judge in the Civil Case determined, on the basis of that submission, that "good cause exists for [the search]." (Civil Case D.I. 116 at 1). Defendant now renews his Fourth Amendment objection to the admission of this evidence, asserting that the Court's prior denial was "based on inaccurate information." (D.I. 138 at 3).

---

[3] *See* 28 U.S.C. § 754 ("A receiver appointed in any civil action or proceeding involving property, real, personal or mixed, . . . shall . . . be vested with complete jurisdiction and control of all such property with the right to take possession thereof."); *Porter v. Sabin*, 149 U.S. 473, 479 (1893) ("The possession of the receiver is the possession of the court; and the court itself holds and administers the estate through the receiver, as its officer, for the benefit of those whom the court shall ultimately adjudge to be entitled to it."); *United States v. Setser*, 568 F.3d 482, 491 (5th Cir. 2009) ("It would make little sense to hold that [defendant] continued to exercise veto power over the receiver's use of his property when the purpose of the receivership [is] to preserve assets from fraudulent depletion."); *United States v. Chaung*, 897 F.2d 646, 651 (2d Cir. 1990) ("[T]he FDIC as receiver stood in the shoes of [the bank in receivership] and had authority to look through all of [its] premises and papers without a warrant.").

Defendant's motion fails on the merits. As the Court already ruled, the house and its contents were "real or personal property" assets of the Receivership under the "control" of the Receiver. (Civil Case D.I. 12 ¶¶ 6-8, 14). And, moreover, the court in the Civil Case properly found that there was probable cause to search the house. (Civil Case D.I. 116). Finally, even if it were error to have allowed the Government to present the gold coins at trial, it was harmless. *See United States v. Mark*, 533 F. App'x 83, 86 n.2 (3d Cir. 2013) ("Because there was sufficient evidence to convict [Defendant], any error in this regard was harmless."); *United States v. Frierson*, 611 F. App'x 82, 86 n.14 (3d Cir. 2015) ("[A]ny error was harmless in light of the overwhelming evidence against [Defendant].").

Accordingly, Defendant's motion for a new trial is denied.

### III.    CONCLUSION

For the reasons set forth above, Defendant's Motion for Acquittal or New Trial (D.I. 138) will be denied. An appropriate Order will be entered.